Hillsborough,
March 1, 1938.

FRANK W. EMERSON

*v.*

MERRIMACK RIVER SAVINGS BANK, & a.

340

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiff.

*McLane, Davis & Carleton* and *George F. Nelson* (*Mr. Carleton* orally), for the defendants.

PAGE, J. On May 1, 1930, the plaintiff deposited in the Merrimack River Savings Bank the sum of $20,000. At that time the bank was insolvent, and it had been insolvent for several years prior thereto. The insolvency was caused by illegal manipulations of investments and accounts by the bank's treasurer, Hale, who had concealed these practices and the bank's condition from the trustees and other agents of the bank and from the Bank Commissioner. For several years Hale had known of the insolvency.

The plaintiff made arrangements for his deposit with Hale personally, and remained ignorant of the bank's condition. The bank thereafter continued to do business through June 7, 1930. On June 9, 1930, the Bank Commissioner procured an injunction restraining

the bank from doing business, took charge under P. L., *c.* 268, and is now liquidating the assets for distribution. On July 15, 1930, the plaintiff, without knowledge of other remedy, proved his claim as a depositor. He has received in dividends 65% of his deposit. Further dividends are not likely to exceed 5%. The plaintiff now seeks to recover the whole balance, which he claims the Bank Commissioner holds as constructive trustee for his benefit.

We may pass over without decision the questions (1) whether upon the agreed facts a case of fraud appears and (2) whether, if there were fraud, the other general depositors are to be regarded as innocent equitable owners with the plaintiff of all the assets of the bank and not mere creditors (*Hall* v. *Paris*, 59 N. H. 71), so that their equities as defrauded *cestuis* have parity. In any event the plaintiff may have preference only if his deposit can be identified as a part of the assets that came into the hands of the Bank Commissioner. *Bank Commissioners* v. *Company*, 70 N. H. 536; *Sloane* v. *Company*, 83 N. H. 583. The plaintiff has the burden of proving the identification. *Annis* v. *Company*, 133 Me. 223.

The plaintiff shows that the check for $20,000 with which he opened his account in the savings bank as of May 1, 1930, was on that day deposited to the credit of the savings bank in the national bank. The important question, however, is whether his $20,000 deposit is to be found in the balance at the national bank taken over by the Bank Commissioner on June 9, 1930.

The gross movements of the deposit in the National Bank for the period involved were as follows:

| | |
|---|---:|
| Balance at opening of business, May 1, 1930 | $214,617.26 |
| Subsequent deposits | 584,994.22 |
| | $799,611.48 |
| Subsequent withdrawals | 672,767.52 |
| Balance to Bank Commissioner, June 9, 1930 | $126,843.96 |

At no time during the period did the daily balance fall below $88,000. Since the balance was always in excess of the plaintiff's contribution to the liquid fund, the plaintiff argues that the whole of his contribution of $20,000 was always to be found in the mass of credits represented by the savings bank's deposit in the national bank. The question involved is purely one of fact, not law. *Bank Commissioners* v. *Company*, *supra*, p. 551. The plaintiff, however,

relies upon the legal presumption that withdrawals were made out of the savings bank's contributions to the fund rather than from those impressed with a trust or charge in favor of the plaintiff. We pass over the question whether there may be any such presumption of law as against contributions made by all the other trust beneficiaries of the fund, though holding that it may not be asserted as against contributors to the fund who deposited under circumstances similar to those surrounding the plaintiff's deposit.

The plaintiff argues that, as far as appears, no other depositor than he was misled by Hale himself. We may assume that no teller of the bank had Hale's guilty knowledge, and that every other depositor than the plaintiff dealt only with some innocent teller. If Hale's knowledge of the insolvency was such as to charge him with a fraudulent intent with respect to the plaintiff's deposit, his knowledge charged him with the same intent every day that the bank was kept open for the receipt of deposits by innocent tellers. He appears to have been given rather absolute control as the managing director "in general charge" of the bank's business whose knowledge might be imputed to the bank. *People* v. *Company*, 242 Ill. App. 579; *Denny* v. *Thompson*, 236 Ky. 714; *Raynor* v. *Bank*, 122 Wash. 150. Hale did not tell the plaintiff that the bank was solvent; there is no presumption that either he or anybody else at any time expressly represented the bank to be solvent. He expressly directed a teller to receive the plaintiff's deposit; he impliedly directed the tellers to receive all deposits that were made. As long as the doors of the bank were kept open, he impliedly represented the bank to be solvent, and he did so as effectively to those depositors whom he did not interview as to the plaintiff.

If there was a fraud upon the plaintiff, the fraud upon other depositors was equal. The plaintiff's preference could not be sustained upon the mere fact that Hale talked with him and suppressed the truth, while Hale as effectively suppressed the truth from other depositors who dealt with innocent tellers subject to his control and direction. Whether or not Hale committed "an independent fraudulent act" in directing and permitting deposits, the record does not disclose. That seems to be immaterial, since every deposit received after Hale knew that the bank was hopelessly insolvent was an increment to the funds of the bank (*Brookhouse* v. *Company*, 73 N. H. 368, 374; *Chase* v. *Bank*, 88 N. H. 275), which Hale, as the officer "in general charge," was bound not to permit and which the Bank Commissioner had no right to retain, if identifiable.

Consequently, if the plaintiff is entitled to a preference, so are others. If the funds of others are equally traceable to the fund the plaintiff seeks to charge, it cannot be said that he has sustained the burden of proof of identifying his contribution if he can do so only by displacing such contributions of others. He fails because of three reasons.

First, it appears that during the period from May 1, 1930, to June 7, 1930, the savings bank, then and for a long time previous insolvent, received deposits amounting to $318,640.75. Included in these deposits there were checks of depositors amounting to $170,181.57, all of which has been definitely traced into the account in the national bank. If the knowledge of Hale as to the insolvency of the savings bank was the knowledge of the savings bank itself, so as to charge the fund with respect to the plaintiff's deposit, it was equally effective to charge the fund with respect to all the other $150,000 subsequently deposited and traceable to the same fund. This seems to be true whether such subsequent deposits were accepted by Hale in person or by some teller as innocent of knowledge and guile as the plaintiff himself. Plainly enough, any theory of identification available to the plaintiff is at least equally available in tracing subsequent deposits.

The contributions of later depositors are just as probably in the fund as the contribution of the plaintiff. Indeed it might be argued that the later the contribution the more probable its presence on June 9, 1930. Upon that theory the last $126,843.96 of savings deposits traceable into the national bank would be found to be there on June 9, to the exclusion of all of the plaintiff's contribution. But even if that theory were rejected, it is perfectly plain that, taking the period only from May 1 on, contributions to the fund were much in excess of the fund received by the Bank Commissioner. Since the plaintiff seeks in this action to recapture all of his $20,000, he fails because of inability to identify it all as coming into the commissioner's hands. The situation differs radically from that of the leading case of identification of bank deposits, *In re Hallett's Estate,* L. R. 13 Ch. D. 696, where two trust funds were traced into the individual bank account of the trustee and at his death the balance of the account was larger than the sum of the two funds.

Secondly, it appears that from May 1 to June 2, inclusive, the total of savings deposits traceable into the national bank was $146,079.70. This included the plaintiff's. At the close of business on June 2, the balance of the fund was $88,766.76, and the deficiency to account for the traceable funds for that limited period was nearly

$60,000. This confirms the conclusion that if the Bank Commissioner received any of the plaintiff's $20,000 it was far from the whole amount. It surely was not an intact $20,000 directly and clearly found to be part of even a conglomerate mass.

Thirdly, the plaintiff has seen fit to ignore everything that happened prior to May 1, 1930, and to avail himself of the sole benefit of the balance of over $214,000 in the national bank account just prior to his contribution to the fund. Without this $214,000 to start with, the plaintiff would be in difficulties from which he could not escape, because all of the deposits beginning with May 1 (including his own $20,000) totalled nearly $90,000 less than the subsequent withdrawals, so that the existence of any fund at all which could be traced into the Bank Commissioner's hands depended not only, as we have shown, upon later contributions by others having equal standing with the plaintiff, but still more largely upon prior contributions which require consideration.

We cannot assume that all of the $214,000 just spoken of was derived from interest, dividends and other income from the investments of the savings bank. From May 1 to June 7 we know that at least $170,000 of some $585,000 of accretions to the fund was from new depositors' check contributions. How much more came in depositors' cash over the counter we cannot tell. We may conclude that much, if not all, of the $214,000 was derived directly from depositors. For several years prior to May 1, 1930, the savings bank had been insolvent. During the last year preceding May 1, 1930, the deposits in the insolvent bank were over $2,800,000. Excluding all still earlier contributions, on the theory (perhaps contrary to fact) that they did not affect the balance of $214,000 existing on May 1, 1930, it would require the tracing of less than ten per cent. of that year's deposits into the national bank to ear-mark the whole $214,000 for depositors earlier than the plaintiff. The plaintiff's theory of tracing depends upon the presumption that the savings bank withdrew only money received from income and retained in trust all of the new deposits. In the factual search, this tracing-theory leads to a conclusion as adverse to the plaintiff as it appears at first beneficial. The attempt to trace ends in the discovery of an intermingling of funds so complex and elusive that it cannot be said that the plaintiff's money came into the Bank Commissioner's hands in even a remote state of integrity and identification.

*Bill dismissed.*

All concurred.

ON REHEARING. After the foregoing opinion was filed the plaintiff moved for a rehearing.

*Robert W. Upton* and *Laurence I. Duncan* (by brief), for the motion.

PAGE, J. The plaintiff contends that a distinction is to be made between the acceptance of a deposit personally by Hale and the acceptance by a teller innocent of Hale's knowledge. We are aware of authorities for the distinction, but we see no common sense in holding that the bank was chargeable with Hale's knowledge of the insolvency from the fact that Hale told an innocent teller to receive the deposit and to make out a deposit-book, whereas the bank would not be so chargeable if Hale gave no such specific order as to the very next customer who deposited through the same teller. In the latter case the teller was expected and permitted by Hale, even if not ordered, to accept the deposit. Hale's intent to defraud the depositor by the receipt of the deposit is as apparent in the one case as the other. Whatever fraud was committed on the plaintiff lay in Hale's suppression of the truth. If he, as an officer of the bank, owed the duty of disclosure to the plaintiff, he owed it also to all depositors. To treat the depositors unequally would be to treat them inequitably.

*Former result affirmed.*

All concurred.